## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Rodney Marques Ford,

                    Petitioner,                          Case Number: 22-10143
                                                          Honorable F. Kay Behm

v.

Donald Curley,[1]

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Rodney Marques Ford, currently in the custody of the Michigan Department of Corrections, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his convictions for involuntary manslaughter, carrying a concealed weapon, and possession of a firearm during the commission of a felony.  For the reasons explained below, the Court denies the petition.  The Court denies a certificate of appealability, and grants Petitioner leave to proceed on appeal *in forma pauperis*.

### I.  Background

Petitioner's convictions arise from the 2016 shooting death of Kyieyan Warlick outside the El Mexicano Bar & Grill in Romulus, Michigan.  During the early morning hours of March 13, 2016, Shamera and Erika McKaye exited the bar as it was closing.

_____

[1] The proper respondent in a habeas case is the warden of the facility where the petitioner is incarcerated. See Rule 2(a), Rules Governing § 2254 Cases.  Thus, the Court substitutes the warden of the prison where Petitioner is incarcerated, Donald Curley, as the respondent.

They walked into the parking lot and began hitting Ryan Mack, Shamera's former boyfriend.  They hit him with their fists and Shamera hit him with a bottle.  After the fight, Mack jumped into his black Impala where Jimmy Trussell was a passenger and sped around the parking lot.  The Impala pulled into a crowd of people and struck Petitioner at knee level.  At that point, shots were fired in the direction of the Impala.  Two witnesses identified Petitioner as the shooter.  A bystander, Kyieyan Warlick, was shot in the abdomen and later died from his injuries.

The Michigan Court of Appeals set forth the following additional relevant facts:

> Eric Love and Jimmy Trussell identified defendant as the perpetrator …
> Love asserted he was familiar with defendant before the shooting, knowing
> him from the community.  Love testified that he observed defendant open
> the trunk of defendant's vehicle and remove a handgun, placing it in his
> front waistband.  He also stated that he saw defendant withdraw the
> handgun from his waistband and fire multiple shots toward a black Impala
> after it came close to defendant.  While Love was impeached at the most
> recent trial because of discrepancies in his testimony from a previous trial,
> Love's identification of defendant and his description of defendant's
> actions in discharging the firearm did not vary in either proceeding.
> Testimony was also elicited at the current trial regarding a taped telephone
> conversation between Love and friends of defendant, suggesting an initial
> belief that the shooter was from the Detroit area.  Love asserted at trial that
> he indicated to defendant's friends that defendant was the shooter and not
> individuals from Detroit.

> Defendant was separately identified as the perpetrator by Trussell.  As a
> passenger in the black Impala, Trussell confirmed that the vehicle came
> close to individuals, including defendant, in the parking lot. Trussell
> asserted defendant withdrew a handgun from the waistband of his trousers
> and fired multiple shots into the hood of the vehicle.  Trussell identified
> defendant as the shooter in a photographic array provided by police.
> Questions arose whether the police indicated to Trussell that the
> perpetrator's photograph was contained in the array before the
> identification. Trussell, at times, appeared to deny any such suggestion by
> the police and at other times appeared to confirm the allegation.  The police
> officer who provided the array to Trussell, Detective Carolyn Manners,
> denied informing Trussell that a photograph of the shooter was contained in

2

the array before he viewed it and asserted that she read a generic instructional statement prepared by the Michigan State Police (MSP) to Trussell before he was shown the array to assure conformity and preclude any improper influence in his identification.  As with Love, Trussell's testimony was impeached to an extent premised on discrepancies between his testimony at the proceeding that resulted in a mistrial and the current trial.

*People v. Ford*, No. 339084, 2018 WL 4099717, at *2 (Mich. Ct. App. Aug. 28, 2018).

Petitioner's first trial ended with a hung jury.  After a second trial, Petitioner was convicted of involuntary manslaughter, carrying a concealed weapon and felony firearm. He was sentenced to 8 to 15 years for involuntary manslaughter, 2 to 5 years for carrying a concealed weapon, and 2 years for felony firearm.

Petitioner filed an appeal by right in the Michigan Court of Appeals raising three claims through counsel and three additional claims in a pro per supplemental brief.  The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Ford*, No. 339084, 2018 WL 4099717 (Mich. Ct. App. Aug. 28, 2018).  The Michigan Supreme Court denied Petitioner's application for leave to appeal.  *People v. Ford,* 503 Mich. 1002 (Mich. April 2, 2019).

Petitioner then returned to the trial court to file a motion for relief from judgment. The trial court denied the motion.  (ECF No. 15-20.)  The Michigan Court of Appeals and Michigan Supreme Court both denied Petitioner leave to appeal the trial court's decision. *People v. Ford*, No. 357562 (Mich. May 3, 2022); *People v. Ford*, 509 Mich. 975 (May 3, 2022).

Petitioner then filed this habeas petition.  He seeks relief on these claims:

I.     Mr. Ford was denied his state and federal constitutional due process rights to a fair trial where the prosecutor committed numerous errors resulting in prosecutorial misconduct.

II.    Mr. Ford was denied his state and federal constitutional rights to effective assistance of counsel where trial counsel's numerous errors deprived Mr. Ford due process rights to a fair trial.

III.   Mr. Ford was denied his state and federal constitutional due process rights to a fundamentally fair trial by the cumulative effect of these numerous prejudicial errors.

IV.    Mr. Ford was denied his state and federal constitutional rights to effective assistance of counsel where appellate counsel failed to raise these meritorious claims.

Respondent argues that Petitioner's first, second, and third claims are procedurally defaulted and that all claims are meritless.  (ECF No. 14.)  The Court is not required to address a procedural default issue before deciding against the petition on the merits. *Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first.")  Here, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims rather than conducting a lengthy procedural default inquiry.

## II.  Legal Standard

A Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  *Shoop v. Hill*, 139 S. Ct 504, 506 (2019).  A federal court may grant habeas corpus relief only if the state court's decision "resulted in a decision that

was contrary to, or involved an unreasonable application of," Supreme Court precedent that was "clearly established" at the time of the adjudication.  28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  To obtain habeas relief in federal court, a state prisoner must show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011)

For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.  Discussion

### A.  Claim One: Prosecutorial Misconduct

In his first claim, Petitioner argues that he was denied his due process right to a fair trial by numerous instances of prosecutorial misconduct.  Specifically, he alleges the prosecutor: (1) argued facts not in evidence in closing argument, (2) knowingly presented false testimony, and (3) improperly referenced an unadmitted, unofficial transcript of a recorded phone call during cross-examination of witness Eric Love.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted). The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (alteration in original) (quotation omitted).

### 1.

First, Petitioner claims that the prosecutor's closing argument was improper because the prosecutor misrepresented trial testimony by stating, "Mr. Love, Mr. Trussell, and Ms. Williams all say he is firing on the passenger side of the vehicle. All three of them say that. They can't all three be lying."[2] (*See* ECF No. 1, PageID.16.) Petitioner specifically objects to the reference to Williams. He argues that her testimony was that she ducked and did not actually see the shooter. The last state court to issue a reasoned opinion regarding this claim, the Michigan trial court, held that the record did

---

[2] Although Petitioner uses quotation marks, this is not an exact quote. The relevant portion of the prosecutor's argument is slightly different than what Petitioner sets forth. *See* ECF No. 15-17, PageID.1909. This discrepancy, however, does not impact the Court's analysis.

not support Petitioner's allegations.  The trial court held that the prosecutor's comments were supported by Williams' trial testimony.  (See ECF No. 15-20, PageID.2137-38.)

The trial court's decision was not contrary to, or an unreasonable application of *Darden*.  As Petitioner points out, Ms. Williams testified, "I heard the shots.  I didn't actually, you know, see where it came from."  (ECF No. 15-15, PageID.1625.)  But she also testified that the shots were coming from "the passenger side of the vehicle, the front."  (*Id.* at PageID.1633.)  The prosecutor's argument was a reasonable inference based on Williams' testimony.  *See United States v. Betro*, 115 F.4th 429, 448 (6th Cir. 2024) ("[P]rosecutors must be given leeway to argue reasonable inferences from the evidence.") (quotation omitted).  A prosecutor does not commit misconduct by focusing on evidence favorable to the defense in closing argument.

Second, Petitioner argues that the prosecutor misrepresented the size of the blind spot in the security video footage from the shooting.  The prosecutor stated that a photograph of the parking lot where the shooting had occurred (which was admitted into evidence) showed that the blind spot was essentially the size of the courtroom.  (ECF No. 15-17, PageID.1904.)  Petitioner maintains that this argument was inconsistent with other testimony at trial including Detective Manners' testimony that the blind spot was about the size of 1-2 parking spaces.  (ECF No. 15-16, PageID.1746.)  The trial court held that the prosecutor's argument was based on a reasonable inference from the testimony and photograph.  (ECF No. 15-20, PageID.2138.)  The trial court's conclusion was not an unreasonable application of *Darden*.  Additionally, the jurors were instructed that the lawyers' statements and arguments are not evidence.  (*See* ECF No. 15-17,

PageID.1962.)  The jurors had sufficient information to get a general sense for the blind spot through the surveillance video and crime scene photographs.  The prosecutor's reference to the size of the blind spot did not deny Petitioner a fair trial.

Finally, Petitioner argues that the prosecutor improperly argued in closing that "[t]his was a single gun situation." (*Id.* at PageID.1905.)  The state court held this was "an inference reasonably based on the findings of the ballistics report that all of the 40 mm shell casings were fired from the same firearm and that the jacketed bullets and bullet remains are 40-caliber, except for those that were damaged and not capable of being evaluated."  (ECF No. 15-20, PageID.2139.)  Petitioner contests the accuracy of this inference, but that is a question for the jury and Petitioner fails to show that the prosecutor's argument rested on any facts not in evidence or unreasonable inferences.

**2.**

Next, Petitioner argues that the prosecutor knowingly presented perjured testimony because Eric Love's, Jimmy Trussell's, and Detective Manners' testimony in the second trial was inconsistent in part with their testimony in the first trial.

The Michigan Court of Appeals denied this claim:

> [T]he primary contention raised by defendant appears to be his insistence that the prosecutor relied upon, and the trial court permitted, the use of perjured testimony to obtain defendant's convictions.  Specifically, defendant references conflicting testimony elicited from Love and Trussell in his first and second trials.[8]  He also cites to testimony by Manners, suggesting it was perjured or false.  "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment.  If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."

*People v. Schrauben*, 314 Mich. App. 181, 187; 886 N.W.2d 173 (2016) (quotation marks and citations omitted).

Inconsistencies did exist in the trial testimony elicited, particularly with respect to Love and Trussell, from the first trial. However, there is no evidence or suggestion that the prosecutor was aware that the witnesses would alter or change their testimony from the first trial. Second, the inconsistencies were primarily focused on inconsequential or peripheral issues, such as whether the witness was drinking or smoking marijuana in the Bar's parking lot, the reason for going to the Bar on that particular evening, and if defendant was observed trying to intervene in a separate physical altercation that occurred before the shooting. The witnesses did not vary in their identification of defendant as the shooter. Thus, "[e]ven if the prosecution knowingly presented perjured testimony, the false testimony likely would not have affected the judgment of the jury." *Id.* at 188. In particular, the inconsistencies cited by defendant are more consequential to issues of witness credibility and the weight that should be attached to the testimony of a particular witness. Further, although Love's current assertion that he saw defendant remove a handgun from the trunk of defendant's vehicle and place it in his waistband conflicts with his testimony in the first trial that he could not ascertain what defendant removed from the trunk of the vehicle, Love asserted that he was not truthful in the first trial. As such, the testimony from Love that resulted in defendant's conviction cannot be construed as "perjured." Defense counsel also had opportunities to adequately cross-examine these witnesses while under oath and point out the inconsistencies in their testimony for the jury's consideration. "The focus must be on the fairness of the trial, not on the prosecutor's or the court's culpability." *Id.* at 189 (quotation marks and citation omitted). "Therefore, 'a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment.'" Id. (citation omitted). Although the inconsistencies in the testimony, primarily on peripheral matters, may lead to issues of credibility, they do not detract from the consistent testimony elicited identifying and implicating defendant as the shooter.[9]

---

[8] Defendant's argument is, to say the least, convoluted. He appears to be suggesting, in part, that the surveillance video was fabricated and thus that its use constituted a "fraud upon the court." He argues that the trial court should have excluded the video from evidence. But defense counsel had no objection to the introduction of the surveillance video and there is no basis from which to conclude that the video was falsified or otherwise inauthentic.

[9] In addition, defendant does not explain or expand upon his assertion that Manners and other witnesses provided perjured testimony.

*Ford*, 2018 WL 4099717, at *10-11.

Petitioner has not shown that the Michigan Court of Appeals' holding was unreasonable. The "deliberate deception of court and jury by the presentation of testimony known to be perjured" violates a defendant's due process rights. *See Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (per curiam). To prevail on such a claim, a defendant must show that the prosecution knowingly presented false testimony that materially affected the proceeding. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). But "mere inconsistencies" in the testimony are not enough. *Id.* A defendant must prove that the testimony was "indisputably false." *See id.* at 822-23. The discrepancies were placed before the jury and, because the witnesses testified, the reliability of their testimony was assessed "by testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 41 (2004). Petitioner fails to show that the Michigan Court of Appeals' decision denying this claim was contrary to, or an unreasonable application of, *Darden*.

**3.**

Petitioner's final prosecutorial misconduct claim concerns a recorded telephone conversation between Mohamed Cherif and Eric Love. The recording, which was apparently obtained without Love's knowledge, was played for the jury but not transcribed by the court reporter. Petitioner claims that the prosecutor improperly referenced an "inaccurate, unauthenticated, unadmitted" transcript of the telephone conversation when cross-examining Love. (ECF No. 1, PageID.20.) During

deliberations, the jury asked to review a transcript of the recording.  (ECF No. 15-17, PageID.1981.)  The court informed the jury:

> The audio file or the file with that conversation, that was marked as an exhibit.  It was admitted into evidence and is in the jury room.  It's one of those disks that you can listen to.  Understandably, you've asked for a transcript of that because at times it's difficult, I suspect, for you to hear.
>
> The transcript, a transcript, was not done of that conversation, therefore, nothing was marked as an exhibit and nothing went into evidence and I can't give you a transcript now.  So that is something that, if there is a silver lining, it's something you can listen to and listen to it firsthand.  But, no, there is not a transcript that was admitted. So that's not something I can give you for purposes of deliberations.

(ECF No. 15-17, PageID.1985.)

The trial court denied this claim on collateral review because the phone call was played during trial and the jury could independently determine what was said during the phone call.  (ECF No. 15-20.)  The trial court's decision is not unreasonable.  The recording is part of the record in this habeas case.  (*See* ECF No. 9.)  The sound quality is indeed poor.  It was appropriate for the jury to base review of the phone call on the recording itself.  The jurors could independently determine the extent to which the conversation was discernable.  Further, it was not improper for the prosecutor to paraphrase portions of the phone call during closing argument.  The prosecutor had extensively questioned Love about the phone call, asking him numerous times to clarify whether he made a particular statement during the call.  In closing argument, the prosecutor referenced statements Love confirmed he made.  The prosecutor did not act improperly nor was Petitioner's right to a fair trial violated.  Relief is denied on this claim.

## B.  Claim Two: Ineffective Assistance of Counsel

Petitioner next argues that he was denied his right to the effective assistance of counsel based on counsel's numerous errors.

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v Washington*, 466 U.S. 668 (1984).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *See id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'"  *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).  In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

This Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

12

**1.**

Petitioner's first three ineffective assistance of counsel claims concern counsel's failure to object to the alleged instances of prosecutorial misconduct discussed above. The trial court denied these claims when the court denied Petitioner's motion for relief from judgment.  The court held that, because each of the prosecutorial misconduct claims lacked merit, counsel was not ineffective for failing to object.  (ECF No. 15-20, PageID.2142-43.)  The state court's holding was not contrary to, or an unreasonable application of, Supreme Court precedent because "[t]he failure to raise a meritless claim does not constitute ineffective assistance of counsel." *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020).

**2.**

Next, Petitioner argues that counsel was ineffective for failing to impeach Eric Love with his inconsistent prior testimony.  The state court denied this claim because "[t]he record clearly demonstrates that trial counsel cross examined Eric Love at length regarding the inconsistencies in his trial testimony. ... Trial counsel also argued to the jury during closing that Love was not a credible witness due to the inconsistences in his testimony."  (ECF No. 15-20, PageID.2143.)

A review of the record shows that defense counsel vigorously cross-examined Love and explored inconsistencies in his testimony. The Court finds that the Michigan Court of Appeals' conclusion that trial counsel capably cross-examined the victim was not contrary to, or an unreasonable application of, Supreme Court precedent.

**3**.

Petitioner claims that defense counsel performed deficiently by failing to introduce

a video of Detective Manners' interview with Ryan Mack after telling the jury during

opening statement that they would see the video.

The trial court denied this claim:

> Defendant contends that trial counsel promised to present evidence of Det.
> Manners interviewing witnesses and using suggestive tactics. This video,
> according to defendant, would have demonstrated that Manners' actions
> created prejudice against defendant and if presented at the second trial
> would have resulted in a different outcome. Indeed, defendant is correct
> that some courts have held that an attorney's decision to break a promise
> made to the jury during opening statements can constitute ineffective
> assistance of counsel. *People v Thomas*, unpublished per curiam opinion of
> the Court of Appeals, issued April 27, 2017 (Docket Nos. 32944 &
> 329449), p 17; citing *United States ex rel. Hampton v Leibach*, 347 F.3d
> 219 (CA 7, 2003). Defendant is also correct in his assertion that trial
> counsel spoke to this video during opening statements. However, the
> record reflects that trial counsel questioned Manners on this very issue
> during cross-examination, and, while, counsel did not admit the video, he
> made repeated attempts to draw doubt on Manners' actions during the
> interview and her credibility. The Court does not find that defendant has
> overcome the presumption that trial counsel was effective and pursued a
> reasonable trial strategy.

(ECF No. 15-20, PageID.2143-44.)

The Court has reviewed the video recording.[3] The manner and tenor of Detective

Manners' questioning of Mack would not have demonstrated that she improperly

persuaded witnesses to incriminate Petitioner. She clearly tried to persuade Mack to

testify but, contrary to Petitioner's argument, the recording does not show that Manners'

---

[3] In habeas corpus proceedings, review of legal claims is "limited to the record that was before
the state court." *Shoop v. Twyford*, 596 U.S. 811, 819 (2022). Petitioner submitted the recording
to the trial court in conjunction with his motion for relief from judgment. (ECF No. 15-19.) The
recording (ECF No. 9) is therefore properly considered by the Court.

conduct would have undermined her own credibility or that of other prosecution witnesses.  Indeed, it would have been reasonable for counsel to conclude that the recording did not provide value beyond what was achieved through cross-examination of Detective Manners.  The trial court's decision denying this claim was a reasonable application of *Strickland*.

### 4.

Petitioner maintains that trial counsel erred in failing to call witnesses Raphael Bell and Mohamed Cherif to testify regarding the recorded phone conversation between Cherif and Love.  Initially, defense counsel intended to call Cherif and Love, but later informed the court "we've had a change of heart."  (ECF No. 15-16, PageID.1879.)   The trial court held that counsel's decision was clearly a matter of reasonable trial strategy. (ECF No. 15-20, PageID.2144.)  The court further held that counsel's strategy to call Love's credibility into question was adequately accomplished through cross-examination of Love.

Petitioner fails to overcome the "strong presumption" that defense counsel's decision was the result of reasonable trial strategy.  *Strickland*, 466 U.S. at 689. Accordingly, the state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

### 5.

Petitioner claims that counsel was ineffective for failing to object when the prosecutor or witnesses identified a person in a video or photo as Petitioner.  This, Petitioner maintains, invaded the province of the jury.  He argues it also violated a

stipulation that prosecution witnesses would not identify Petitioner as the shooter in videotapes, still photographs, or demonstrative exhibits.

The Michigan trial court found no error, noting that the few times a witness testified that the person depicted was Petitioner the witness was promptly corrected and told to refer to the individual as the shooter rather than as the Petitioner.  (ECF No. 15-20.)  Counsel did not have a chance to object because the court issued its own correction so quickly.  (*Id.*)  The prosecutor's argument during closing that the person depicted in the video was Petitioner was proper because it was a reasonable inference based on the evidence presented.  Moreover, the jury was shown the video and still pictures.  The jurors, therefore, did not have to rely on anyone else's identifications.  They could independently evaluate the evidence.  The state court's denial of this claim was reasonable.

### 6.

During cross-examination of prosecution witness, Jimmy Trussell, defense counsel abruptly informed the court that he could not continue because he was in a "ton of pain."[4] (ECF No. 15-14, PageID.1470.)  Defense counsel declined the court's offer of a continuance indicating that he was finished with his cross-examination.  (*Id.*)  After the jury was excused and upon further reflection, defense counsel stated that he would like to leave open the possibility of recalling the witness.  (*Id.* at PageID.1473.)  The prosecution did not object and the court agreed to assist in securing the witness's

---

[4] The record shows that counsel was awaiting hip replacement surgery.  (ECF No. 15-14, PageID.1288.)

presence if defense counsel decided to recall him.  (*Id.*)  Ultimately, defense counsel did

not move to recall Trussell.

Petitioner argues that defense counsel should have recalled Trussell and that

failure to do so left unchallenged multiple inconsistencies in Trussell's testimony.  The

trial court held that counsel's cross-examination of Trussell was thorough and complete.

(ECF No. 15-20, PageID.2145.)  The record supports the trial court's conclusion.  Indeed,

counsel often demonstrates competence by knowing when to stop questioning a witness.

It was not unreasonable for counsel to conclude that further cross-examination would not

benefit the defense.  Relief is denied on this claim.

### 7.

Next, Petitioner argues that counsel was ineffective for stipulating to admission of

a ballistics report authored by Shawn Kolonich[5] because it denied him his right of

confrontation.  The state court held that counsel properly stipulated to the report's

admission and noted Petitioner did not indicate any objection.  (ECF No. 15-20,

PageID.2146.)  An attorney may waive certain rights on behalf of a defendant, *New York*

*v. Hill*, 528 U.S. 110, 114 (2000); and Confrontation Clause rights are among those that

may be waived by counsel.  *Smith v. Cook*, No. 17-4118, 2020 WL 1875172 (6th Cir.

Apr. 15, 2020).  There is no evidence that Petitioner disagreed with counsel's decision to

stipulate to admission of the report.  Petitioner fails to show a likelihood that cross-

---

[5] The trial court's order denying Petitioner's motion for relief from judgment spells the ballistics
expert's name Sean Colonich.  (ECF No. 15-20, PageID.2146.)  In the expert's report, the
expert's name is spelled Shawn Kolonich.  (ECF No. 1, PageID.122.)  The Court presumes that
is the correct spelling.

examination of Kolonich would have yielded a different result.  Relief is denied on this claim.

### 8.

Petitioner asserts that defense counsel provided ineffective assistance during plea negotiations.  The Sixth Amendment right to counsel extends to the plea-bargaining process, and a criminal defendant is "'entitled to the effective assistance of competent counsel'" during plea negotiations.  *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  To establish prejudice in the context of a rejected plea offer, a defendant must show that, but for the ineffective advice of counsel, there is a reasonable probability that the defendant would have accepted the plea agreement, and the prosecution would not have withdrawn it considering intervening circumstances.  *Id.* at 164.  The defendant also must show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed.  *Id.*

Before the start of his second trial, Petitioner rejected a plea offer which would have allowed him to plead guilty to manslaughter and felony firearm, with a sentence of 5 to 15 years and 2 years, respectively.  (ECF No. 15-14, PageID.1256.)  He argues that counsel erroneously advised him that he should not accept the plea offer because "they cannot identify the suspect."  (ECF No. 1, PageID.35.)  Defense counsel's misjudgment about whether the prosecution could prove the identity element does not by itself amount

to deficient performance.  "[A]n erroneous strategic prediction about the outcome of a

trial is not necessarily deficient performance."  *Lafler*, 566 U.S. at 174.

Petitioner also complains that counsel did not advise him whether to accept the

plea.  A defendant "has the ultimate authority to determine whether to plead guilty …"

*Florida v. Nixon*, 543 U.S. 175, 187 (2004).  Petitioner, therefore, cannot expect counsel

to tell him what to do.  Petitioner does not allege that he was unaware of the risks of

proceeding to trial or that he did not understand the terms of the plea offer.  He does not

claim that he lacked information necessary to make an informed decision nor does he

allege that absent counsel's alleged deficiencies he would have accepted the plea.  The

state court's decision denying this claim was not unreasonable.

## 9.

Next, Petitioner argues that counsel was ineffective for failing to request a self-

defense instruction.  The trial court held that counsel was not ineffective in opting to

pursue a defense of mistaken identity instead.  (ECF No. 15-20, PageID.2146.)  A self-

defense instruction was inconsistent with the defense theory of mistaken identity.

Counsel could have made the strategic decision that presenting inconsistent defenses

risked confusing the jury and leading them to conclude that Petitioner was implicitly

admitting he was at the crime scene.  *See Brizendine v. Parker*, 644 F. App'x 588, 596

(6th Cir. 2016).  The state court's decision denying this claim was a reasonable

application of *Strickland.*

Case 4:22-cv-10143-FKB-CI   ECF No. 17, PageID.2952   Filed 02/26/25   Page 20 of 24

**10.**

Finally, Petitioner argues that counsel was ineffective for failing to move to suppress the in-court identification by Jimmy Trussell because it was the product of an impermissibly suggestive pretrial identification procedure.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using *Biggers'* test). But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence. *Brathwaite,* 432 U.S. at 112-113. Instead, the Court has held that determining whether to suppress the identification should be done on a case-by-case basis. *Id.* at 116; *see also Biggers*, 409 U.S. at 201.

The danger is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." *Id.* Therefore, "reliability is the linchpin in determining the admissibility of identification testimony. *Brathwaite*, 432 U.S. at 114. A court must

20

undertake a two-step analysis to determine the validity of a pretrial identification.  First,

the court must determine whether the procedure was unduly suggestive.  If the court finds

that the procedure was unduly suggestive, the court must then "evaluate the totality of the

circumstances to determine whether the identification was nevertheless reliable."

*Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994).  The Supreme Court has

identified these factors to consider in determining whether an identification was reliable

under the totality of the circumstances: "the witness's opportunity to view the criminal at

the time of the crime; the witness's degree of attention at that time; the accuracy of the

witness's prior description of the criminal; the witness's level of certainty at the

identification; and the length of time between the crime and the identification."  *Erkins v.*

*Chuvalas*, 684 F. App'x 493, 496 (6th Cir. 2017) (citing *Biggers*, 409 U.S. 188, 200).

Further, unless there is "a very substantial likelihood of irreparable misidentification,"

identification evidence "is for the jury to weigh."  *Manson*, 432 U.S. at 116.

The trial court (the last state court to issue a reasoned opinion regarding this claim)

rejected this claim, finding that the pretrial identification procedure was not

impermissibly suggestive and that the reliability of Trussell's identification was

appropriately left for the jury to weigh:

> Here, defendant alleges that the photograph lineup presented to Trussell
> was impermissibly suggestive because Det. Manners told him that the
> shooter was one of the individuals in the lineup.  Even if the lineup was
> suggestive, it was not so unduly.  As discussed on appeal:
>
>> As a passenger in the black Impala, Trussell confirmed that
>> the vehicle came close to individuals, including defendant, in
>> the parking lot. Trussell asserted defendant withdrew a
>> handgun from the waistband of his trousers and fired multiple
>> shots into the hood of the vehicle. Trussell identified

defendant as the shooter in a photographic array provided by police. Questions arose whether the police indicated to Trussell that the perpetrator's photograph was contained in the array before the identification. Trussell, at times, appeared to deny any such suggestion by the police and at other times -3- appeared to confirm the allegation. The police officer who provided the array to Trussell, Detective Carolyn Manners, denied informing Trussell that a photograph of the shooter was contained in the array before he viewed it and asserted that she read a generic instructional statement prepared by the Michigan State Police (MSP) to Trussell before he was shown the array to assure conformity and preclude any improper influence in his identification. As with Love, Trussell's testimony was impeached to an extent premised on discrepancies between his testimony at the proceeding that resulted in a mistrial and the current trial.

... This demonstrates that Trussell was a firsthand witness to the crime and saw defendant as the shooter at the time of the crime. Even though Trussell offered conflicting testimony at times, trial counsel questioned both Trussell and Manners regarding the photographic identification and, despite defendant's assertion, attempted to demonstrate a lack of credibility in Trussell and Manners. Furthermore, Manners testified that the other photographs in the lineup depicted individuals that were similar in appearance to defendant. Moreover, it may have been a sound trial strategy to not suppress the lineup because it allowed defense counsel the ability to question Trussell on his ability to identify defendant and question Manners regarding her actions with the lineup.

(ECF No. 15-20, PageID.2147-48.)

The trial court's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Sixth Circuit has held that absent a specific photograph being suggested to a witness, general comments that a suspect's photograph is in the line-up do not create an unduly suggestive line-up procedure. *See United States v. Porter*, 29 Fed. Appx. 232, 237 (6th Cir. 2002) (police officer's comment to witness that the array included the man suspected of the crime was not unduly suggestive because "he did not suggest which of the six photos showed that man" and did

not point the witness to a particular photo).  Petitioner fails to show that the photo

identification procedure was unduly suggestive.  Therefore, counsel was not ineffective

in not moving to suppress Trussell's in-court identification.

### D.  Claim Three: Cumulative Effect of Alleged Errors

Petitioner claims that the cumulative effect of multiple errors asserted in the

habeas petition denied him a fair trial.  This claim does not provide a basis for relief

because the Sixth Circuit has held that such claims are not cognizable in federal habeas

corpus proceedings.  *Cartwright v. Phillips*, No. 23-5747, 2024 WL 669308, at *5 (6th

Cir. Jan. 26, 2024) (citing *Hill v. Mitchell*, 842 F.3d 910, 948 (6th Cir. 2016)).

### E.  Claim Four:  Ineffective Assistance of Appellate Counsel

Lastly, Petitioner argues that appellate counsel was ineffective for failing to raise

the claims raised in this petition on direct review.  Strategic and tactical choices regarding

which issues to pursue on appeal are "properly left to the sound professional judgment of

counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Petitioners are not

entitled to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v.

Barnes*, 463 U.S. 745, 754 (1983).  According to the Supreme Court:

> For judges to second-guess reasonable professional judgments and impose
> on appointed counsel a duty to raise every "colorable" claim suggested by a
> client would disserve the ... goal of vigorous and effective advocacy....
> [n]othing in the Constitution or our interpretation of that document requires
> such a standard.

*Id.* at 754.

As addressed above, the claims Petitioner wanted raised on appeal lack merit.

Appellate counsel, therefore, was not ineffective in failing to raise them. *Mapes v. Coyle*,

171 F.3d 408, 413 (6th Cir. 1999) ("[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues.").

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## V. Conclusion

For the reasons stated, the Court **DENIES** the petition for a writ of habeas corpus and **DENIES** a certificate of appealability.

The Court **GRANTS** Petitioner leave to proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**SO ORDERED**.

Date: February 26, 2025

s/F. Kay Behm
F. Kay Behm
United States District Judge

24